**GETZ BROS. & CO. OF THE ORIENT, Limited, v. SHIREK.**

(Circuit Court of Appeals, Ninth Circuit. January 7, 1924.)

No. 4079.

**Sales ⬦85(1)—Contract for sale on condition held to have become effective.**

An executory contract made by the foreign manager of the seller for sale of a commodity then in his possession, "if cable advice from our home office permits sale without suit against original buyers," *held* to constitute a valid contract of sale, binding on the seller, where it was not shown that there was any cable communication between the manager and the home office, or that any prior contract stood in the way of delivery, and it was shown that no suit was brought against any original purchaser.

In Error to the United States Court for China; Charles S. Lobingier, Judge.

Action at law by H. M. Shirek, doing business as the Merchandise Brokerage Company, against Getz Bros. & Co. of the Orient, Limited. Judgment for plaintiff, and defendant brings error. Affirmed.

The defendant in error brought an action against the plaintiff in error to recover damages for the failure of the latter to deliver 370 tons of steel plate cuttings in accordance with the terms of a written contract. The plaintiff in error, in its answer, admitted the execution of the contract, but denied that the same constituted a contract of sale, "by reason of the fact that the same was not confirmed by defendant's home office as provided for in said document." The material portion of the written instrument is as follows:

"Contract.

"Getz Bros. & Co. of the Orient, Limited.
"Shanghai, February 3, 1922.

"Getz Bros. & Co. of the Orient, Limited, have sold and Merchandise Brokerage have bought the following described merchandise, upon the terms and conditions as named herein, and on the reverse side of this contract. All sales are subject to goods being obtainable.

"Seller is not responsible for nondelivery by reason of loss of cargo en route, fire or any unavoidable casualties, or for delays beyond their control. To be insured against war risk at buyer's expense.

"Terms—Shipment: Delivery from Shanghai stock.

"Remarks: Complete delivery and full payment to be made on or before February 28, 1922.

| "Quantity. | Description. | Price, U. S. Gold. |

"370 tons (more or less) covering all mild steel plate cuttings, all sizes, and test pieces held in our Shanghai stock covered by drafts Nos. B. C. 4139, 4137, 4135, 4315, 4323, 2913, 2914, 4362, 4363, and 4373. Say three hundred sixty to three hundred seventy-one tons at Shanghai. taels 2.75 per picul of 133⅓. Receipt of deposit taels 900 is hereby acknowledged and we agree to deliver documents on payment, if cable advice from our home office permits sale without suit against original buyers. Reply should be received approximate seven (7) days when written confirmation will be made.

"Approved by seller,

"Getz Bros. & Co. of the Orient, Limited,
"[Signed] By T. L. Parkhurst, Manager."

The remaining portion of the contract consisted of conditions and stipulations that had no relation to the merits of the controversy between the parties. The court below found for the plaintiff in the action, ruling that the instrument sued upon was an executed contract of sale.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

294 F.—56

Charles W. Slack and Edgar T. Zook, both of San Francisco, Cal., for plaintiff in error.

Warren Gregory, Allen L. Chickering, Evan Williams, Donald Y. Lamont, all of San Francisco, Cal., and Schuhl & Schoenfeld, of Shanghai, China, for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The business of the plaintiff in error at Shanghai was conducted by Parkhurst, the general manager. No question is made of his authority to enter into the contract here involved. The transaction concerned the sale and delivery of steel plate cuttings then in the possession of the plaintiff in error at Shanghai. We agree with the plaintiff in error that the contract was evidently written into a printed form ordinarily used for a purpose other than that for which it was used in the present case, and that, if there is any conflict between the printed portions and the portions that were inserted, the latter must prevail. We also agree with the plaintiff in error that the contract was not an executed contract of sale, but was an executory agreement, or a contract of sale upon condition subsequent. But we do not agree that the condition subsequent was that which was alleged in the answer and upon which the plaintiff in error relies. The contract, as we read it, does not bear the construction that the sale was subject to the approval of the home office of the plaintiff in error. We find its true meaning to be that the sale was made upon the condition that it could be carried out by the seller without bringing suit against the original buyers of the merchandise. In other words, it was a sale to become effective in case it was found unnecessary to bring a certain suit. It appeared that the "original buyers" referred to were prior purchasers of the steel plate cuttings, who had refused to receive the same on the ground that they were not up to specifications. The plaintiff in error produced no evidence and made no showing that it ever became necessary to sue the original buyers. The evidence was all to the contrary. From what subsequently transpired, it is not unreasonable to assume that the purpose of the seller in inserting the condition in the contract was to hold the sale in abeyance for a short time, in view of a fluctuating and rising market, with the prospect that the goods might be sold to another at a higher price.

We do not know that the agent ever cabled to his home office. No evidence was introduced tending to show that he did, other than his own recital in his letter to the defendant in error of February 14, 1922. According to that letter he cabled on the very day on which the contract was signed, and, instead of asking for confirmation of the sale, he cabled: "We understand legally must sue buyers before selling." In that letter he stated that on February 7 he had received by cable a reply from the home office "in which they refer to our message and advise us to take legal proceedings," and he proceeded to add the expression of his regret that he could not carry out his contract. But he refused to exhibit to the defendant in error the cabled dispatch. There was no competent evidence, therefore, that he ever cabled to the

home office, or that the home office ever cabled to him. In the trial the plaintiff in error introduced no evidence to show that any pre-existing contract stood in the way of the delivery of the goods mentioned in its contract with the defendant in error. It was shown, and it was undisputed, that no suit was ever brought against any original buyers.

It is true, as the plaintiff in error suggests, that in a transaction of bargain and sale the agreement of the parties is to be construed according to its terms and unaffected by equitable considerations. But here, according to the strict terms of this agreement, we find that the minds of the parties met upon a contract of sale, subject to be defeated only upon the subsequent ascertainment of a fact which would prevent its consummation, and that the contemplated contingency never did intervene as an obstacle thereto. In 23 R. C. L. 1261, it is said:

"An executory contract of sale, otherwise mutual, may be binding on the parties, though the duty to perform or carry out the contract may be subject to a contingency, and on the happening of the contingency the duty to perform becomes binding on both parties."

The present case is not unlike Durrive v. Frere, 11 La. 374, a case where a planter sold his sugar crop for a certain price, with the condition that he was only bound to comply in case his agent had not sold the crop in the meantime.

The provision in the contract that written confirmation would be made on receipt of reply from the home office was nothing more than a promise to notify the defendant in error of the result of the inquiry into the question whether or not the obstacle to the sale should be found to exist. It was not the reservation of an option in the seller to confirm or disavow the sale, irrespective of the question of the existence of that obstacle.

The judgment is affirmed.